UNITED STATES of America, Plaintiff-Appellant,

v.

Rigoberto EUCEDA–HERNANDEZ, Carlos Wilfredo Rodrigues-Barahona, Eucebio Martinez-Perez, Jorge Alberto Fuentes-Ramos, Cesar Augusto Erazo, Defendants-Appellees.

No. 84–5068.

United States Court of Appeals, Eleventh Circuit.

Aug. 19, 1985.

---

Stanley Marcus, U.S. Atty., Roy J. Kahn, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Roy Rodriguez, Coral Gables, Fla., for Euceda-Hernandez & Rodriguez-Barahona.

Dennis N. Urbano, Coral Gables, Fla., for Martinez-Perez.

William A. Clay, Stephen Haguel, Miami, Fla., for Fuentes-Ramos & Erazo.

Before TJOFLAT and FAY, Circuit Judges, and ALLGOOD *, District Judge.

TJOFLAT, Circuit Judge:

The United States appeals from an order of the district court, entered pursuant to Fed.R.Crim.P. 16(d)(2), suppressing certain post-arrest statements made by the defendants to a federal agent because the prosecutor failed to provide defense counsel with the substance of the statements until three days prior to trial. Concluding that the district court misconstrued the scope of its authority to remedy a party's delayed compliance with a Rule 16 discovery order and that a less severe sanction would have achieved the result the court contemplated in entering the order, we reverse.

I.

This is a drug smuggling case. It began on Sunday, November 20, 1983, when the U.S. Coast Guard boarded the fishing vessel *Goloson* off the southeast coast of Florida and found 20,000 pounds of marijuana in a secret compartment in the vessel's hold, adjacent to its fuel tanks and the

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama sitting by designation.

engine room. The *Goloson* had a crew of five, all Honduran nationals. They are the defendants in this case: Martinez-Perez, the ship's captain, Fuentes-Ramos, the engineer, and Euceda-Hernandez, Augusto Erazo, and Rodrigues-Barahona, the seamen.

After discovering the marijuana, the Coast Guard arrested the crew and took the *Goloson* to Key West, Florida. There, the five crew members, after receiving *Miranda* cautions, made the statements the district court suppressed. A Coast Guard officer, Lt. Commander J.L. Sether, interrogated the crewmen. They told Sether conflicting stories. According to the captain, he and the others had been hired by the *Goloson's* owners to take the vessel from Raotaan, Honduras to Miami, Florida. They left Raotaan on Saturday morning, November 19, and had been at sea for about one day when the Coast Guard boarded their vessel. He claimed to have no knowledge of the cargo of marijuana or the secret compartment in which it was stowed. When asked why the vessel was off course, the captain said that he had headed the vessel east to fish on the Misteriosa Banks. The captain merely shrugged his shoulders when Officer Sether pointed out that the boat had no fishing gear.

The crewmen varied markedly as to how long they had been at sea. As noted, the captain said they had left Raotaan on November 19 and had been at sea for a little over one day. One crewman said the *Goloson* had been at sea for three days, another six days. Five of the crewmen said they had come straight from Honduras, with no stops. A sixth said that they had stopped in Columbia, South America. His passport, which he had obtained just for the voyage to the United States, had been stamped in Columbia on October 31, indicating that the voyage had begun over three weeks prior to the *Goloson's* seizure.

Officer Sether questioned the crew about the hatch covers over the fuel tanks, which opened to the secret marijuana compartment, inquiring in particular as to why the gaskets and wrenches that fit the covers were lying about the deck. None had lifted the hatch covers or could explain why the gaskets and wrenches were lying about. The engineer, the crew member responsible for the fuel and the condition of the tanks, said that he never sounded the tanks, adding that he could ascertain the fuel level from the engine room by using a "visual tube." Before he was told that the Coast Guardsmen had discovered the secret compartment and the marijuana, the engineer volunteered that he did not know that the vessel had been carrying marijuana in a secret compartment next to the engine room.

After he finished questioning the *Goloson's* crew, Officer Sether prepared a report of the boarding and seizure of the *Goloson* and the crew's arrest and submitted that report and various items of evidence taken from the *Goloson* to the U.S. Customs office in Key West, Florida. On December 5, 1983, the defendants were indicted, in two counts, for knowingly and intentionally possessing marijuana, with intent to distribute, in violation of 21 U.S.C. § 955a(a) (1982), and for conspiring to commit such offense, in violation of 21 U.S.C. § 955c (1982). The defendants were promptly arraigned and pled not guilty to both counts.

Following their arraignment the magistrate entered a standing discovery order [1] requiring the Government to produce, among other things, "[t]he substance of any oral statement made by the defendant before or after his arrest in response to interrogation by a then known to be government agent which the government

---

1. The discovery order was entered pursuant to Fed.R.Crim.P. 16(a)(1)(A) which provides in pertinent part:

> Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: ... the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent....

intends to offer in evidence at trial." It is not disputed that the defendants' oral responses to Officer Sether's questions fell within this category and that the prosecutor was obliged to produce them. The prosecutor had no knowledge of the defendants' post-arrest interrogation, however. In responding to the magistrate's discovery order on December 19, therefore, he stated that "[t]here [were] no oral statement[s] made by the defendant[s] before or after arrest in response to interrogation" by any government agent that the Government intended to offer at trial. Defense counsel, apparently questioning the accuracy of the prosecutor's response, moved the court, on December 29, to order the Government to produce all "oral, written, or recorded statements" made by any defendant. On Friday, January 20, 1984, three days before the defendants' trial was scheduled to begin, the magistrate granted their motion, ordering the Government to produce the defendants' statements as required by "the standing discovery order."

Meanwhile, on January 6 defense counsel convened in Key West, Florida, to examine the evidence the Coast Guard had turned over to the U.S. Customs Service. They examined everything except Lt. Commander Sether's report of the boarding and seizure of the *Goloson*, the marijuana contraband, and the hatch covers from above the secret compartment in the vessel's hold. Counsel chose not to examine the hatch covers because they had photographs of them.

On Friday, January 20, as he was preparing for trial, the prosecutor met with the Coast Guard officers, including Lt. Commander Sether, who had arrested the defendants and seized the marijuana. While he was interviewing Sether, he learned for the first time that Sether had conducted a post-arrest interrogation of the defendants and thereafter made a written summary thereof. Immediately after examining the summary, the prosecutor called one of the defense attorneys in the case, advised him of the summary's existence and the gist of its contents, and asked him to notify the other defense counsel. None of the de-

fense attorneys made any attempt to obtain a copy of Officer Sether's summary; nor did any of them inform the prosecutor that he would move the court to suppress his client's statements to Sether because of the prosecutor's delay in discovering them.

On Monday morning, January 23, as the parties assembled to select the jury to try the case, the prosecutor delivered a copy of Officer Sether's summary to each defense attorney. The whole day was spent impaneling the jury. On Tuesday, January 24, before the jury was sworn, the defendants jointly filed a motion to suppress their oral statements to Officer Sether on the ground that Sether, in questioning them, had violated their constitutional rights. The court recessed the trial to hear argument on the motion. The defense counsel began by advising the court that the prosecutor had not made them aware of the defendants' statements to Officer Sether until the previous Friday, and they urged the court to suppress the statements on the ground that such belated discovery had violated the court's standing discovery order. They represented that, as a result of the delay, their clients had suffered "irrevocable harm" in the form of the additional investigation counsel would have to conduct to be adequately prepared for trial. Specifically, counsel would have to inspect the gaskets and wrenches Sether referred to in questioning the *Goloson*'s engineer, because those items were not in the photographs they had examined in Key West on January 6 when the Government made its tangible evidence available for the defense's inspection. Counsel also represented that they wanted to inspect the "visual tube" the engineer said he used to determine the fuel level in the vessel's tanks. In addition to their prejudice argument, counsel suggested that the court should suppress the defendants' statements as a means of letting the U.S. Attorney's office know that its practice of delaying compliance with the court's standing discovery orders in criminal cases would no longer be tolerated.

Responding to defense counsel's argument, the prosecutor said that he had not

known of the existence of Officer Sether's summary because it had not been part of the Customs case agent's file. The case agent's file, the prosecutor explained, normally contained all of the Government's discovery. The file in this case, he represented, contained Officer Sether's report describing the Coast Guard's boarding and search of the *Goloson* and seizure of the contraband but nothing at all indicating that the defendants had been interrogated following their arrest; accordingly, he had no reason to suspect that the file was not complete.

At this point the court ruled from the bench, ordering the defendants' statements suppressed. The court stated: "I hate to do it, but I don't see any alternative. I think the government has got to find out what its got ... and it hasn't been done in this case." The court added: "[I]f [these statements] make any difference in the way the defendant should investigate or proceed in his defense it seems to me we have to exclude them."

The prosecutor then asked the court if it would consider a brief continuance as an alternative to suppressing the statements. He pointed out that the suppression remedy, which the court should order only as a last resort, was not necessary since any possible prejudice to the defendants could be cured by á short recess. The prosecutor also pointed out that the jury had not yet been sworn and that the disruption of the judicial process would thus be minimal. Finally, he noted that, in this case, the Government would be required to establish that the defendants had knowledge of the *Goloson*'s cargo of contraband, that it had no direct evidence of such, and that it needed every piece of circumstantial evidence available, including the defendants' statements, to prove its case. The defense did not deny that a brief recess would cure any prejudice the defendants may have suf-

fered. Nonetheless, the court, obviously ignoring the prejudice issue, replied that it would stand by its earlier decision to suppress the evidence because it had before it a "clear violation of the discovery order." This appeal promptly followed.[2]

## II.

Fed.R.Crim.P. 16(a)(1)(A) requires the Government to produce, upon a defendant's request, "the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant ... in response to interrogation by ... a government agent." The magistrate's standing discovery order, entered at the time defendants were arraigned, enforced this provision by requiring the Government to produce any such statements known to it or which, through the exercise of due diligence, could be ascertained. The trial judge found that the Government had failed to comply with this order by not discovering and divulging the contents of the statements defendants made to Officer Sether until the Friday before trial.

When a party fails to comply with a Rule 16 discovery order, "the court may order such party to permit the [required] discovery ..., grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such order as it deems just under the circumstances." Fed. R.Crim.P. 16(d)(2). Here, the trial judge chose the third option, prohibiting the Government from introducing into evidence, through Lt. Commander Sether's testimony, the statements the defendants had made.

■■■ A district court's decision to impose a Rule 16(d)(2) sanction for the violation of a discovery order, and thus its choice of sanction, is a matter committed to the court's sound discretion. Absent an

**2.** We have jurisdiction to entertain this appeal under 18 U.S.C. § 3731 (1982) which provides in pertinent part:

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evi-

dence or requiring the return of seized property in a criminal proceeding ... if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

abuse of discretion, the court's decision will not be disturbed on appeal. *United States v. Burkhalter*, 735 F.2d 1327, 1329 (11th Cir.1984); *United States v. Campagnuolo*, 592 F.2d 852, 858 (5th Cir.1979).[3] In exercising its discretion, the district court must weigh several factors, and, if it decides a sanction is in order, should fashion "the least severe sanction that will accomplish the desired result—prompt and full compliance with the court's discovery orders." *United States v. Sarcinelli*, 667 F.2d 5, 7 (5th Cir. Unit B 1982).[4] *See also Burkhalter*, 735 F.2d at 1329; *United States v. Gee*, 695 F.2d 1165, 1169 (9th Cir.1983) (citing *Sarcinelli, supra* ). Among the factors the court must weigh are the reasons for the Government's delay in affording the required discovery, the extent of prejudice, if any, the defendant has suffered because of the delay, and the feasibility of curing such prejudice by granting a continuance or, if the jury has been sworn and the trial has begun, a recess. *Burkhalter*, 735 F.2d at 1329; *United States v. Hartley*, 678 F.2d 961, 977 (11th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 and 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983); *Sarcinelli*, 667 F.2d at 6–7.

The district court failed to consider and weigh these factors in imposing the sanction in this case. If it had given them appropriate consideration and weight, the court would have concluded that a brief continuance would have allowed the defendants complete discovery without undue prejudice. The court suppressed the defendants' statements because of the prosecutor's conduct and because defense counsel represented that they would have to do some additional investigatory work before proceeding to trial. In the court's view, that such investigation might be completed in a matter of hours was of no moment; the fact remained that the Government had committed "a clear violation of the discovery order and defense counsel would have to do some extra work."

■ The presence of a clear violation of a discovery order does not excuse a trial judge from weighing the factors cited above and imposing the least severe, but effective, sanction. The purpose of requiring the Government to disclose evidence is to promote "the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect of surprise at trial; and by otherwise contributing to an accurate determination of the issue of guilt or innocence." Fed.R. Crim.P. 16 advisory committee note. By suppressing the Government's evidence rather than granting a continuance or recess, a trial judge may achieve a speedier resolution to a criminal case and reduce his docket, but he does so at the expense of sacrificing the fair administration of justice and the accurate determination of guilt and innocence.

■ This is not a case in which the discovery of evidence is delayed until the jury is sworn and a recess to enable the defendant to make whatever adjustments in his trial preparation and strategy may be necessary to meet the evidence could not mitigate the prejudicial effects of the delay. *See, e.g., United States v. Hartley*, 678 F.2d 961, 977 (11th Cir.1982); *United States v. Crouthers*, 669 F.2d 635, 640–41 (10th Cir.1982); *United States v. Gillings*, 568 F.2d 1307, 1310 (9th Cir.), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 760 (1978). Nor is it a case involving evidence unknown to the defendants. Even if we were to assume that the defendants never told their attorneys about their post-arrest interrogation, their attorneys nevertheless knew three days before trial that their

---

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**4.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

clients had talked to Officer Sether and the gist of what they had said. The court failed to take this important fact into account.

The defendants suggest that, if we do not uphold the sanction in this case, the prosecutors in the Southern District of Florida will conclude that they can violate Rule 16(a) discovery orders with impunity. The defendants urge us to adopt the rationale the district court employed: if the belatedly discovered evidence will make "any difference" in the defendant's preparation for trial or his trial strategy, that evidence must be suppressed. The defendants' argument is patently disingenuous. Every time the Government produces Rule 16(a) evidence, defense counsel, if he is to be worth his salt, must reassess his position, determine what further investigation may be necessary, and, perhaps, modify his trial strategy. In most instances, particularly where the evidence is disclosed before the jury is sworn and the trial begins, a brief continuance, to allow counsel to confer with his client or restructure his trial strategy, will eliminate any prejudice the belated discovery may have worked. Even where, as here, further investigation is required, the suppression of the evidence may turn out to be altogether unnecessary.

The defendants' suggestion that we approve the court's sanction as a prophylactic measure against prosecutorial recalcitrance was made to us, and adopted, in *Campagnuolo*, 592 F.2d at 858. But the prosecutorial error there was far more egregious than what we face here. In *Campagnuolo*, the prosecutor had knowledge of the defendant's post-arrest statement for three years after the court ordered Rule 16(a) discovery; yet he failed to disclose the statement until the eve of trial. We held that the trial court, confronted with such a

flagrant disregard of its discovery order, acted within its discretion in suppressing the statement, particularly in view of the fact that it was not critical to the Government's case. *Compare Sarcinelli*, 667 F.2d at 6 (court reversed suppression order even in face of flagrant violation where suppression would amount to dismissal of prosecution and where alternative, effective sanctions were available).

■ The facts before us stand in sharp contrast to those in *Campagnuolo*. There is absolutely no showing here that the prosecutor intentionally withheld information he was required by court order to disclose. His assumption that the case agent's file was complete was a reasonable one; Officer Sether's investigative report, describing the *Goloson*'s seizure and the defendants' arrest, gave no hint that Sether or anyone else had interrogated the crew. In addition, there is no suggestion in the record, save defense counsel's protestations, that the late disclosure in this case was anything other than an isolated incident. Accordingly, the suppression order cannot be upheld as a measure to prevent future disobedience of the court's Rule 16(a) discovery orders.[5]

We make one final observation the district court should have made in choosing the Rule 16(d)(2) remedy to impose in this case. The evidence suppressed was, as the prosecutor informed the court, extremely important to the Government's case. The Government would be required to show that the defendants had knowledge of the marijuana stowed away in the hidden compartment. Because it had no direct evidence of such, the defendants' statements, which, among other things, were riddled with inconsistences and indicated that the defendants had stopped in Columbia, a well-known source of illegal drugs, on their

5. Additionally, the suppression order is not supportable on the ground that a continuance would have created Speedy Trial Act problems. The Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (1982), mandates that a criminal trial commence 70 days from the filing of the indictment. A trial "commences" when jury selection begins. *United States v. Gonzales*, 671 F.2d 441, 443 (11th Cir.), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982). The indictment, here, was returned on December 5, 1983, and the trial commenced January 23, 1984, well within the 70 day time period. The brief continuance the prosecutor suggested could have been accommodated.

way from Honduras to Miami, were a major part of the Government's proof. Although the suppression of this evidence may not have been tantamount to a dismissal of the prosecution, as it was in *Campagnuolo, supra,* it would certainly have done great damage to the prosecution's case.

In *United States v. Burkhalter,* 735 F.2d 1327 (11th Cir.1984), we found an abuse of discretion when the trial court suppressed evidence the prosecutor failed to disclose until the morning of the trial, because the prosecutor's late discovery was not deliberate and a continuance would have cured any prejudice the defendant may have suffered from the delay. *Burkhalter* controls our disposition here. The district court's order suppressing the defendants' statements is, accordingly,

REVERSED.