[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13912
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 11, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:09-cr-00131-HES-MCR-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES CHARLES JONES, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 11, 2011)

Before CARNES, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

James Charles Jones appeals his convictions for (1) conspiracy to distribute

5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A),

851, and 846; (2) possession with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 851, and 18 U.S.C. § 2; (3) managing a residence for the purpose of unlawfully storing and distributing cocaine and cocaine base, in violation of 21 U.S.C. §§ 856(a)(2) & (b), 841(b)(1)(A), and 851; (4) conspiracy to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A), and 851; and (5) possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A), 851, and 18 U.S.C. § 2. On appeal, Jones argues that the district court erred in denying his motion to suppress evidence. After review, we affirm.

I.

This case arises from a narcotics investigation. On April 17, 2009, confidential informants ("CIs") working with Immigration and Customs Enforcement ("ICE") met co-defendant Albertano Hernando-Sanchez, who was driving a white Malibu, at a gas station in Palatka, Florida. Law enforcement provided the CIs with a recording device so that they could listen to the conversation. At the meeting, Hernando-Sanchez instructed the CIs to follow him to another location. The CIs followed Hernando-Sanchez to a parking area outside of 230 San Jose Avenue and then discussed purchasing cocaine from him.

Herando-Sanchez told the CIs that the cocaine was was very close—less than a block away—and instructed them to leave for fifteen minutes and wait for his call.

Once the CIs left, two law enforcement officers conducted ground surveillance of 230 San Jose Avenue.[1] From their vantage point, the officers could also see the house next door, 228 San Jose Avenue. The officers observed several individuals walk back and forth between the residences. The officers also observed Hernando-Sanchez's white Malibu move from 230 San Jose Avenue to the driveway of 228 San Jose Avenue. Around the same time, Jones, who was driving a black truck, parked in front of 228 San Jose Avenue. Several individuals came out of that residence and spoke with Jones. After the white Malibu moved to the road, Jones backed his truck into the driveway of 228. A short time later, Jones left 228, drove around the block, and then parked his truck in the driveway of 230 San Jose Avenue.[2] The white Malibu also moved to 230 San Jose Avenue. At some point during that activity, Hernando-Sanchez called the CIs and told them it would be a little longer—maybe twenty minutes—before the transaction could take place.

---

[1] Before this time, law enforcement used aerial surveillance, but not ground surveillance, because they feared that ground surveillance would impede the investigation.

[2] Two law enforcement officers testified at Jones's suppression hearing that he appeared to be conducting counter-surveillance.

About an hour after Hernando-Sanchez's initial call, he contacted the CIs again and told them to return to 230 San Jose Avenue. The CIs went inside the residence and were shown fifty kilograms of cocaine by Hernando-Sanchez and another male. The CIs believed that a third individual was also in the residence. The CIs offered to pay $1.5 million for the cocaine and then left the residence, purportedly to retrieve the money to pay for the cocaine.

About six minutes later, law enforcement entered 228 and 230 San Jose Avenue without warrants. The officers moved all the occupants outside and then secured the residences. While search warrants for the residences were being obtained, one officer interviewed Jones. Once officers returned with warrants, law enforcement searched both properties, seizing *inter alia* money and cocaine.

Jones was indicted and moved to suppress the evidence seized from 228 and 230 San Jose Avenue and his statements to law enforcement. After holding a hearing, the magistrate judge recommended that the district court deny Jones's motion to the extent that it sought to suppress the physical evidence seized from the residences. The magistrate judge found that law enforcement's initial warrantless entry violated the Fourth Amendment but determined that the search warrants were obtained based on information from an independent source. The magistrate judge recommended granting Jones's motion, however, insofar as it

4

pertained to his statements as fruit of the illegal warrantless entry.

While adopting the magistrate judge's factual findings, the district court denied Jones's motion to suppress in its entirety, concluding that law enforcement's initial warrantless entry of 228 and 230 San Jose Avenue was justified by probable cause and exigent circumstances. After the district court's ruling, Jones pleaded guilty to the charges in the superseding indictment and reserved the right to appeal the adverse determination on his motion to suppress. This is Jones's appeal.

## II.

"Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts de novo." United States v. Jordan, 635 F.3d 1181, 1185 (11th Cir. 2011) (quotation marks omitted). "Further, when considering a ruling on a motion to suppress, all facts are construed in the light most favorable to the prevailing party below." United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000). "We are not restricted to the evidence presented at the suppression hearing and instead consider the whole record." Jordan, 635 F.3d at 1185. "[W]e may affirm for any reason supported by the record, even if not relied upon by the district court." United States v. Al-Arian, 514 F.3d 1184, 1189

(11th Cir. 2008) (quotation marks omitted).

Under the independent source doctrine, even where a Fourth Amendment violation has occurred, evidence "obtained from a lawful source, independent of the illegal conduct" is admissible. United States v. Davis, 313 F.3d 1300, 1303 (11th Cir. 2002); see also Segura v. United States, 468 U.S. 796, 805, 104 S. Ct. 3380, 3385 (1984) (explaining that the exclusionary rule is not implicated when the government learned of the challenged evidence from an independent source). The rationale for the independent source doctrine is that the government should be put "in the same, not a worse, position tha[n] [it] would have been in if no . . . error or misconduct had occurred." Murray v. United States, 487 U.S. 533, 537, 108 S. Ct. 2529, 2533 (1988) (quoting Nix v. Williams, 467 U.S. 431, 443, 104 S. Ct. 2501, 2509 (1984)). As in this case, where law enforcement makes an initial warrantless entry of a residence and then obtains a search warrant, "if the search warrant was obtained based upon information from an independent source, then the warrantless entry, even though illegal, [does] not require exclusion of [the] evidence." United States v. Glinton, 154 F.3d 1245, 1254 (11th Cir. 1998).

When the affidavit for the search warrant contains information obtained as a result of the initial warrantless entry, "we . . . look to whether the other information provided in the affidavit is sufficient to support a probable cause

6

finding." United States v. Chaves, 169 F.3d 687, 692 (11th Cir. 1999); see also

United States v. Virden, 488 F.3d 1317, 1322 (11th Cir. 2007) ("Probable cause

exists when there is 'a fair probability that contraband or evidence of a crime will

be found.'" (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581,

1585 (1989))). "If so, suppression is not required . . . provided . . . that 'the

agents' decision to seek the warrant was not prompted by what they had seen

during the initial entry.'" Chaves, 169 F.3d at 692–93 (quoting Murray, 487 U.S.

at 542, 108 S. Ct. at 2536).

Ignoring the information law enforcement obtained during the initial

warrantless entry of 228 and 230 San Jose Avenue,[3] the affidavits state that: (1) a

CI, who was equipped with an audio monitoring device, met with an unknown

Hispanic male at a gas station; (2) the Hispanic male told the CI to follow him to

another location, which turned out to be 230 San Jose Avenue; (3) once there, the

Hispanic male told the CI that the cocaine was "very close and not even a block

away" and instructed the CI to leave for fifteen minutes; (4) surveillance revealed

that a white Chevrolet Malibu, used initially to bring the CI to 230 San Jose

---

[3] Because we find that the search warrant affidavits for 228 and 230 San Jose Avenue support a probable cause finding and that law enforcement did not seek the search warrants because of what they saw during the initial entry, we assume, without deciding, that the initial warrantless entry violated the Fourth Amendment.

7

Avenue, was moved from 230 to 228 San Jose Avenue; (5) law enforcement saw numerous individuals move between 228 and 230 San Jose Avenue; and (6) the CI observed fifty kilograms of cocaine in 230 San Jose Avenue. In view of those facts, there was "a fair probability that contraband or evidence of a crime" would be found in the residences, and thus the search warrants were supported by probable cause.[4] United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991) (en banc); see also United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994) ("Probable cause deals with probabilities. These are not technical; they are the factual and practical considerations of everday life on which reasonable and prudent men, not legal technicians act." (quotation marks omitted)).

We also conclude that the district court did not clearly err in finding that law enforcement's decision to seek search warrants for 228 and 230 San Jose Avenue was "not prompted by what they had seen during the initial entry."

---

[4] We reject Jones's argument that remand is necessary in order for the district court to make a factual finding that the issuing judge's probable cause decision was not affected by the information in the search warrant affidavits that was obtained during the initial warrantless entry. Jones relies on Murray v. United States, 487 U.S. 533, 108 S. Ct. 2529 (1988), in support of his argument. In Murray, the district court failed to make a specific factual finding that law enforcement would have sought a warrant in the absence of the prior illegal entry. Id. at 543, 108 S. Ct. at 2536. The Supreme Court remanded the case for an explicit factual finding on that issue. Id. at 543–44, 108 S. Ct. at 2536. Unlike that issue, whether probable cause existed to support the search warrants in the absence of the unlawfully acquired information is a *legal conclusion*. For that reason, no factual finding by the district court is required. See Glinton, 154 F.3d at 1254–55 (explaining that if the warrantless entry was illegal, "the warrant itself must be appraised to determine whether it was sufficient to establish probable cause for the search on independent grounds").

8

Chaves, 169 F.3d at 692–93 (quotation marks omitted); see also United States v.

Siciliano, 578 F.3d 61, 69 (1st Cir. 2009) ("[W]hether the agents' decision to seek

the warrant was prompted by unlawfully acquired information—is a factual

finding subject to clear error review."). Detective Swart testified at Jones's

suppression hearing that law enforcement decided to make the initial entry after

witnessing "a lot of movement between 228 and 230." The officers feared that the

cocaine, which had been observed in 230, would be moved out of the area. Once

the initial entry was made, the residences were secured and officers left within ten

minutes of the entry to obtain search warrants. In light of those facts, we cannot

say that the district court's finding was clearly erroneous. For these reasons, the

district court did not err in denying Jones's motion to suppress the evidence seized

from 228 and 230 San Jose Avenue.[5]

AFFIRMED.

---

[5] To the extent that the district court erred in denying Jones's motion to suppress his statements to law enforcement as fruit of the illegal initial warrantless entry, the error was harmless beyond a reasonable doubt. See United States v. Turner, 871 F.2d 1574, 1581–82 (11th Cir. 1989). Even without the statements, the evidence against Jones would have been sufficient to support his convictions. See United States v. Villabona-Garnica, 63 F.3d 1051, 1057 n.5 (11th Cir. 1995).