John KORNEGAY, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: March 26, 1991.
Decided: Sept. 11, 1991.

Nancy Jane Perillo, Asst. Public Defender, Wilmington, for appellant.

Timothy J. Donovan, Jr., Deputy Atty. Gen. (on appeal), Wilmington, for appellee.

Before CHRISTIE, C.J., and MOORE, and HOLLAND, JJ.

CHRISTIE, Chief Justice:

The defendant/appellant, John H. Kornegay, Jr., was charged by indictment with two counts of unlawful sexual intercourse in the first degree and one count of kidnapping in the first degree. On September 20, 1989, as a result of a jury trial in the Superior Court, Kornegay was convicted on one count of attempted sexual intercourse in the first degree (a lesser included offense) and of kidnapping in the first degree. The jury found Kornegay not guilty on the other count of unlawful sexual intercourse in the first degree apparently concluding that the actions charged in the two counts amounted to one continuous offense. Kornegay was sentenced to two terms of life imprisonment. The Superior Court denied Kornegay's post-trial motion for judgment of acquittal on the kidnapping charge. *State v. Kornegay*, Del.Super., 579 A.2d 147 (1989). Kornegay now appeals those convictions.

Kornegay has raised three issues on this appeal. He contends through his attorney that: 1) the State's failure to produce Kornegay's taped statement until the virtual "eve of trial", despite defense counsel's repeated demands, prejudiced Kornegay's right to a fair trial; 2) there was insufficient evidence to support the kidnapping conviction with respect to both the "restraint" element and the "unlawful purpose" element as indicted; and 3) there was insufficient evidence to support the conviction for attempted unlawful sexual intercourse in the first degree.

We conclude that despite the State's reprehensible failure to comply in a timely fashion with Kornegay's clear discovery demands, there has been no showing of prejudice to justify reversal of his convictions. However, we also conclude that there is insufficient evidence to support Kornegay's conviction for kidnapping in the first degree. Therefore, that conviction is reversed. Finally, we find that there is no merit to Kornegay's third contention. Therefore, the attempted sexual intercourse conviction is affirmed.

## FACTS

The charges against Kornegay arose out of an incident occurring at approximately 2:30 a.m. on June 25, 1988 in an alleyway off the 800 block of East 28th Street in Wilmington during which Kornegay allegedly kidnapped and twice raped the victim. Some of the actions giving rise to the charges were observed by two witnesses as they drove down an adjacent alleyway. The witnesses observed Kornegay on top of the victim apparently engaging in or attempting to engage in sexual intercourse. The two witnesses drove around the block and returned to find Kornegay and the victim in essentially the same position. One of the witnesses yelled to Kornegay to get off the victim but Kornegay told the two to leave. The two drove away but returned a second time with their high beam lights directed on Kornegay and the victim. Kornegay still appeared to be engaging in or attempting to engage in sexual intercourse. Kornegay then allegedly dragged the victim approximately fifteen to twenty feet through the alley to a more secluded location where he resumed his activities. The witnesses finally sought out the police and directed two police officers to the scene. With the aid of the police cruiser's high beam lights, the officers observed Kornegay engaging in or attempting to engage in sexual intercourse with the apparently prostrate victim. When Kornegay saw the officers, he let go of the victim's legs, grabbed his pants and ran off down the alley where he was promptly arrested in an adjacent backyard. The police returned to the scene and found the victim in a highly intoxicated state. Her left eye was swollen shut, and her mouth was swollen and full of blood. Due to her intoxicated condition and apparent unwillingness to cooperate, the victim was unable to be of much assistance to the police investigators or to the medical personnel when they tried to find out what had happened. The examining physician found no specific medical corroboration that a rape had occurred.

A few hours after the incident, Kornegay

gave a taped statement to the police in which he denied involvement in the incident. Kornegay claimed that as he walked down 28th Street minding his own business, he heard a woman crying in the alley. When he went to assist her, he found her with no pants on. Kornegay stated that he heard footsteps from another subject running from the scene but could not identify the subject. Thereafter, the police arrived. Kornegay attempted to flee but was promptly apprehended.

However, at trial, Kornegay gave a different account. Kornegay testified that he went to the parking lot of the Thunderguards Motorcycle Club in search of his cousin for the purpose of selling cocaine to the cousin. Kornegay was carrying six twenty-dollar bags of cocaine. Unable to locate his cousin, Kornegay went to an overpass which was a known drug distribution center in hopes of selling some of the cocaine. There the victim approached him offering to trade sex for drugs. He returned with the victim once more to the motorcycle club to try to locate his cousin, but was unsuccessful. He then decided to accept her offer. He handed her two twenty-dollar bags of cocaine and followed her to one of the backyards located off an alley between 27th and 28th Streets. She began undressing herself. Kornegay interrupted her and suggested going to his cousin's house to smoke the cocaine. When she informed him that she ingested cocaine intravenously, he attempted to terminate the deal. However, she refused to return the cocaine or pay for it and instead tried to run away. Kornegay said he caught her, hit her twice, and she fell to the ground. At this point, he noticed two women in a car driving by and covered the victim with his body so the strangers would not see her. He then helped her up and they moved to the location where the two of them were eventually discovered by the police. Kornegay denied dragging the victim across the alley or raping her. He claimed that he slapped her to force her to admit where she hid the cocaine. He eventually found the cocaine hidden in her bra. At this time, the police arrived. He ran from the police because he was already on probation for a drug offense and did not want to be caught with the cocaine he was holding. He claimed that he disposed of the cocaine in the backyard where he was apprehended by the police, however, the cocaine was never recovered. To support his defense of consent, Kornegay called three witnesses who testified to their personal observation of the victim's drug and alcohol abuse, and one of whom testified that he had exchanged sex for drugs with the victim on two prior occasions. Additional facts will be presented as necessary to address Kornegay's contentions on appeal.

I.

Kornegay's first contention on appeal is that the Superior Court abused its discretion in admitting Kornegay's taped statement into evidence. Kornegay contends that the State's delay in producing the statement, despite defense counsel's repeated requests, prejudiced his right to a fair trial. We find no prejudice. While we deplore the State's neglect of its duties under Superior Court Criminal Rule 16, we affirm the ruling of the Superior Court which permitted the State to introduce into evidence the statement made to them by Kornegay.

On October 26, 1988, defense counsel made a written discovery request to the then assigned prosecutor, pursuant to Superior Court Criminal Rule 16(a) [1], for "[a]

---

1. Superior Court Criminal Rule 16(a) states in pertinent part:

      *(a) Defendant's Statements; Reports of Examinations and Tests; Defendant's Grand Jury Testimony.* The defendant may serve upon the Attorney General a request to permit the defendant or someone acting in his behalf to inspect and copy or photograph any relevant (1) written or recorded statements or confes-

sions made by the defendant ... or copies thereof, and the substance of any oral statement which the State intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a state agent which are known by the Attorney General to be within the possession, custody or control of the State.

copy of all written or recorded statements or confessions" given by Kornegay to the police. A Deputy Attorney General responded on November 2, 1988 that no such statement existed. In view of Kornegay's insistence that such a statement was given, defense counsel made a second written request on November 27, 1988. There was no response to that demand. On April 12, 1989, defense counsel made a third written request for the statement. On the same day, the Deputy then assigned to the case, responded by letter that he had requested Detective Vietri to forward a copy of the statement if one existed. The letter also contained a rather complete summary of Kornegay's statement derived from the detective's supplemental report.[2] During the period April 12, 1989 to September 8, 1989 the record disclosed no further communications between defense counsel and the State regarding Kornegay's taped statement. It was not until Friday, September 8, 1989 that the State finally provided a thirty-nine page transcript of the taped statement to defense counsel.[3] The trial was scheduled to begin on the following Monday, September 11, 1989. The tape itself was not made available for review until September 12, 1989, the day the trial actually began. On September 11, 1989, Kornegay filed a pretrial motion to prevent the State from using the taped statement in any manner whatsoever at trial because of its delayed production.[4] In denying the motion, the Superior Court concluded that

the State's letter dated April 12, 1989 accurately summarized the contents of the taped statement, and therefore, there did not appear to be any prejudice to the defendant. It is this ruling that Kornegay now challenges on appeal.

In the case of *Skinner v. State*, Del. Supr., 575 A.2d 1108, 1126 (1990), the Court made it clear that a violation of Superior Court Criminal Rule 16 with respect to the delayed disclosure of evidence requires reversal of a conviction "only if the violation prejudiced the defendant." *See also Johnson v. State*, Del.Supr., 550 A.2d 903, 913 (1988). In the *Skinner* case, the Court adopted the test for harmless error regarding prosecutorial misconduct initially articulated in *Hughes v. State*, Del.Supr., 437 A.2d 559, 571 (1981) as the appropriate test for determining whether a discovery violation requires reversal of a conviction. That test "requires this Court to analyze (1) the centrality of the error to the case, (2) the closeness of the case, and (3) the steps taken by the court to mitigate the results of the error." *Skinner*, 575 A.2d at 1126.

Applying this test to Kornegay's taped statement, we conclude that there is no showing of prejudice to Kornegay to justify reversal of his convictions. As to the first and second prongs of the test, we find that there was overwhelming independent evidence available to the jury to convict Kornegay through the testimony of various eyewitnesses and physical evidence found at the scene. Therefore, we find

2. The prosecutor's letter dated April 12, 1989 stated in part:

Next, in your letter you indicated that the defendant told you that he gave a taped statement to the police. I called Detective Vietri and left a message requesting that he send a copy of the defendant's statement if it exist[s]. In reviewing the detective's supplement, I note that your client was interviewed by Detective Vietri and Detective Freccia on June 25, 1988 at approximately 7:00 a.m. Your client stated that he was walking down 28th Street minding his own business when he heard a woman crying and when he went over to assist her, he noticed that the victim had no pants on. He stated that he heard another subject running from the area but all he could see was his footsteps, and he could not identify the subject. Kornegay stated that as he bent down to help the woman up, a police car pulled up and a white policeman and a black policeman chased him and beat him up.

3. It is not clear from the record which Deputy or Deputies were responsible for the State's failure to make adequate and timely responses to the demands made under Superior Court Criminal Rule 16, but it is clear that Deputy Attorney General Donovan was not assigned to the case at that time.

4. Superior Court Criminal Rule 16(f) states in pertinent part:

If at any time during the course of the proceedings it is brought to the attention of the Court that a party has failed to comply with this Rule or with an order issued pursuant to this Rule, the Court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, *or prohibit the party from introducing in evidence material not disclosed,* or it may enter such other order as it deems just under the circumstances. (Emphasis supplied.)

that Kornegay's taped statement, which Kornegay admits was untrue in several significant respects, was not "central" to the State's case against him, nor was this a "close" case upon the facts. As to the third prong of the test, we agree with the Superior Court's ruling, as discussed above, that the taped statement was admissible and that no action was necessary to mitigate the results of the error for the following reasons: 1) the prosecutor furnished defense counsel with an accurate summary of the substance of Kornegay's taped statement in its letter dated April 12, 1989; 2) the prosecutor furnished defense counsel with the trial transcript four days before the actual trial date; 3) defense counsel's decision not to request a continuance to either alter its defense strategy or to deal with any new matters disclosed in the transcribed statement; and 4) defense counsel's decision not to request any other remedies or sanctions short of complete suppression of the statement. Hence, because we find no evidence of prejudice to Kornegay, we conclude that there was no abuse of discretion by the Superior Court in admitting Kornegay's taped statement into evidence.

## II.

Kornegay's second contention on appeal is that there is insufficient evidence to establish the "restraint" and the stated "purpose", both of which are elements of the kidnapping in the first degree charge as indicted.[5] Therefore, Kornegay contends that his conviction for kidnapping cannot be sustained by this Court. We agree and reverse the conviction for kidnapping in the first degree. In order for this Court to sustain Kornegay's conviction, the relevant question is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. State*, Del.Supr., 453 A.2d 802 (1982); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In the case of *Weber v. State*, Del.Supr. 547 A.2d 948 (1988), this Court addressed the problematic issue of whether a kidnapping charge can be separated from an underlying offense. In doing so, the Court carefully explained the "restraint" element contained in the kidnapping in the first degree offense. The Court stated:

The word "restrain" is specifically defined in the kidnapping context by 11 *Del.C.* § 786(a) as follows:

"Restrain" means to restrict another person's movements intentionally in such a manner as to *interfere substantially* with his liberty by moving him from 1 place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. A person is moved or confined "without consent" when the movement or confinement is accomplished by physical force, intimidation or deception.... (Emphasis supplied.)

*Weber*, 547 A.2d at 957 (1988) (emphasis supplied). This Court has interpreted the term "restrain" as it is used in Section 786(a) as having three elements: "(1) substantial interference with another's liberty; (2) by movement or confinement; (3) without consent." *Burton v. State*, Del.Supr., 426 A.2d 829, 832 (1981).

■ In the *Weber* case, the Court explained that the use of the word "substantially" in 11 *Del.C.* § 786(a) means that there must be *"much more"* interference than is ordinarily incident to the underlying offense. Where a defendant is charged

---

5. The kidnapping count alleged that the defendant did "unlawfully restrain one, [victim], *with intent to facilitate his flight following the commission* of a felony and did not voluntarily release her alive, unharmed and in a safe place prior to trial." (Emphasis supplied).

11 *Del.C.* § 783A(3) Kidnapping in the first degree provides:

A person is guilty of kidnapping in the first degree when he unlawfully *restrains* another person with any of the following *purposes:* ... (3) To facilitate the commission of any felony or flight thereafter; ... and the actor does not voluntarily release the victim alive, or unharmed and in a safe place prior to trial. (Emphasis supplied).

with both kidnapping and an underlying offense such as rape, robbery, or assault, the degree or duration of movement and/or the nature of the restraint are important. However, the primary focus of inquiry should be on whether the movement and/or restraint are merely incident to the underlying offense or are independent of the underlying offense. We also explained that in most situations which involve the underlying crime of rape, robbery, or assault, it is unlikely that there will be the requisite "independent" evidence necessary to support a separate conviction for kidnapping. *Weber*, 547 A.2d at 957–59.

■ As explained above, the relevant inquiry is whether the movement and/or restraint was merely incidental to or independent of the commission of the underlying offense of attempted unlawful sexual intercourse in the first degree for which Kornegay was convicted. It must be recognized that physical force commonly occurs in connection with offenses such as rape, robbery, and assault. Therefore, the existence of physical force alone is insufficient to establish the "substantial interference" necessary for restraint in the kidnapping context. *Burton v. State*, Del.Supr., 426 A.2d 829 (1981).

■ In this case, Kornegay was charged not only with kidnapping but with two underlying offenses of unlawful sexual intercourse in the first degree. In *Burton*, this Court affirmed a conviction for kidnapping and also affirmed two separate convictions for unlawful sexual intercourse in the first degree, when the defendant sexually assaulted the victim and then restrained the victim for the purpose of sexually assaulting her a second time. In *Burton*, this Court concluded that the record supported the jury's verdict of conviction for kidnapping, which reflected its finding that there was evidence of restraint which substantially interfered with the victim's liberty that was independent of and not incident to the two underlying offenses of sexual assault. *Id.*

We find that Kornegay's case is distinguishable from *Burton* for two reasons. First, we will assume arguendo that there was sufficient evidence of substantial interference, independent of the two underlying charges of unlawful sexual assault in the first degree, to support the Superior Court's decision to submit the restraint element of the kidnapping charge to the Kornegay jury. *Weber*, 547 A.2d 948; *Feddiman v. State*, Del.Supr., 558 A.2d 278 (1989). However, here we find significant the jury's finding in the Kornegay case, unlike the jury's finding in *Burton*, that there was one continuous offense of attempted sexual assault, rather than two separate offenses with an intervening period of confinement or movement to facilitate the commission of a second offense. Under the circumstances, the Kornegay jury's verdict, which convicted Kornegay of only one underlying offense of attempted sexual intercourse, reflects its conclusion that the "restraint" exercised by Kornegay in assaulting and moving the victim was not a substantial independent interference but was merely incidental to the continuing commission of one underlying felony (attempted sexual intercourse in the first degree).

Second, Kornegay's case is distinguishable from *Burton* because Burton was charged with kidnapping by independently interfering with the victim's liberty for the purpose of sexually assaulting the victim a second time, whereas Kornegay was charged with kidnapping the victim by independently interfering with the victim's liberty for the purpose of facilitating flight. In this case, the record evidence is insufficient to support the State's indictment that Kornegay restrained the victim "with intent to facilitate his flight" following the commission of a felony. In order to find evidence to support the stated "purpose" element, the State places great emphasis in this appeal on two factors: 1) the physical force exerted on the victim which, it is contended, was intended to render the victim "totally out of it;" and 2) the movement of the victim to a more secluded location.

According to the State, Kornegay intended this conduct to facilitate his flight because by beating her "senseless' he intended to reduce the possibility that the victim

could follow him or alert the police in a timely manner. And it is contended by moving the victim to a more secluded location, he intended to substantially decrease the risk of detection a second time and thereby increase the likelihood that he would be able to flee the crime scene without apprehension. However, this explanation of Kornegay's purpose appears to be mere speculation since all such actions appear to have occurred while he was attempting to rape the victim.

As to the first factor, the medical examiner testified that the victim's physical injuries were superficial and that her mental condition would not have been affected. In fact, the evidence suggests that the victim was "totally out of it" not because of any beating, but rather because she was intoxicated before the incidents giving rise to the charges. As stated above, the beating and movement of the victim appears to have been only incidental to the ongoing commission of the underlying offense of attempted sexual intercourse rather than with the specific intent to hinder the victim's ability to pursue Kornegay and thereby facilitate his flight.

As to the second factor, the evidence shows that Kornegay did not move the victim with the specific intent to facilitate his flight. Indeed, it seems probable that Kornegay could have more readily fled from the first location than the more secluded second location. Rather, Kornegay's movement of the victim appears to have been to facilitate the commission of the underlying offense without further interruption by other witnesses or, as the State contended with its indictment, to commit the second attempted rape with which Kornegay was charged.

■ Moreover, the State realized during trial that its evidence was at variance with the indictment and was insufficient to establish the "purpose" element of facilitat-ing flight which was set forth in the indictment. In fact, the State moved to amend the indictment to conform it to the evidence it presented during Kornegay's trial. During the State's case in chief, the State moved to strike the words "his fight following" from the portion of the indictment which alleged that Kornegay acted with "intent to facilitate *his flight following* the commission of a felony." (Emphasis supplied.) In making that motion, the prosecutor stated that its evidence proved Kornegay moved the victim for the purpose of sexually assaulting her a second time, as in *Burton, not* to facilitate flight:

> The State says that intercourse occurred at one point. He drug her to another location *to facilitate the commission of the second act of intercourse* and we'd just like to strike out "his flight following." (Emphasis supplied.)

The Superior Court denied the State's motion to amend the indictment on the basis that charging a defendant with kidnapping for the purpose of facilitating a felony was substantially different than charging a defendant with kidnapping for the purpose of facilitating flight thereafter. The Superior Court denied the motion because the amendment would entail a change in substance rather than form. *See e.g., Keller v. State*, Del.Supr., 425 A.2d 152, 154–55 (1981); *Harley v. State*, Del. Supr., 534 A.2d 255, 256–57 (1987). We agree. However, notwithstanding its denial of the State's motion to amend the kidnapping count in the Kornegay indictment, based upon the variance between the evidence and the indictment, the Superior Court also denied a defense motion for a judgment of acquittal[6] and submitted the kidnapping count of the indictment to the jury. *But see, State v. Cooley*, Del.Super., 473 A.2d 818 (1983).

Following the denial of its motion to amend, the State's difficulty in reconciling

---

**6.** *The Superior Court also denied a post-trial motion by Kornegay for a judgment of acquittal*  on the kidnapping count of the indictment.

the kidnapping count of the indictment, which charged Kornegay with restraining the victim for the purpose of flight, with its own view of the evidence at trial that the restraint was for the purpose of committing a second sexual assault (which the jury rejected), is apparent from a portion of the prosecutor's closing argument.

> She said that then somebody yelled out "get off of her. Get out of here" and to facilitate the commission, to facilitate his flight, he drags her somewhere between 15 and 30 feet to an area which was out of sight from the 28th Street location— Detective Vietri told you that—so he could complete his act, a second act, distinct of intercourse, certainly shocking enough to them that they went and got the police.

The State's ultimate inability to reconcile the language in the kidnapping count of the indictment, which charged Kornegay with committing that crime for the purpose of facilitating flight, and the State's own view of its evidence at trial, which it contended demonstrated that Kornegay restrained the victim for the purpose of committing a second sexual assault, is also readily apparent from a portion of the prosecutor's rebuttal argument to the jury:

> The *real facts are* that the victim comes out the Thunder Guards walking home. He sees his prey. He sees a person that he can take advantage of, and he gets her in the alley, and the defense says she was hostile. She put up a fight. What does he do? Puts her in submission, beats her into submission, *rapes her, drags her, rapes her again. Those are* the facts. That's for your determination. *The State submits those are the facts.* (Emphasis supplied.)

After viewing the evidence in the light most favorable to the prosecution, given the express language of the kidnapping count in the Kornegay indictment, we find that the record reflects what the prosecutor's motion to amend the indictment and the prosecutor's closing arguments to the jury acknowledged: no rational trier of fact could have found Kornegay guilty *as charged* of the essential elements of kidnapping in the first degree, for the purpose of facilitating flight, beyond a reasonable doubt. *Davis v. State*, Del.Supr., 453 A.2d 802 (1982); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We concluded that the Superior Court erred in denying Kornegay's motion for a judgment of acquittal, following its denial of the State's motion to amend the kidnapping count of the indictment by striking the facilitate flight "purpose," to conform to the State's own assessment of its evidence. Therefore, the conviction for kidnapping in the first degree is REVERSED and the case is REMANDED to the Superior Court for entry of a judgment of acquittal.

### III.

Kornegay's third contention is that there is insufficient evidence to support the conviction for attempted sexual intercourse in the first degree. In order for this Court to test the evidence supporting Kornegay's conviction on this charge, the relevant question is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. State*, Del.Supr., 453 A.2d 802 (1982); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We find that there is overwhelming evidence of defendant's guilt, presented through eyewitness testimony and physical evidence found at the crime scene, so that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, we affirm the conviction of attempted sexual intercourse in the first degree.

In conclusion, the conviction for kidnapping in the first degree is REVERSED and REMANDED for entry of a judgment of acquittal for the reasons set forth in this opinion but the conviction for attempted sexual intercourse in the first degree and the life sentence imposed upon Kornegay for that conviction are AFFIRMED.