**William DORAN, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: March 24, 1992.

Decided: April 3, 1992.

viction of a felony as is permitted by the Statute

Brian J. Bartley, Public Defender's Office, Wilmington, for appellant.

Richard E. Fairbanks, Jr., Dept. of Justice, Wilmington, for appellee.

Before HORSEY, MOORE, and HOLLAND, JJ.

HOLLAND, Justice:

The defendant-appellant, William Doran ("Doran"), was convicted, following a jury trial in the Superior Court, of Burglary in the Second Degree and Theft under $500, a misdemeanor. Doran was sentenced to five years of incarceration for the burglary conviction and two years of incarceration for the theft conviction. This is Doran's direct appeal.

According to Doran, the Superior Court abused its discretion, and thereby committed reversible error, when it allowed the prosecutor to impeach the credibility of Doran's direct testimony with a prior oral statement by Doran. That prior statement had previously been excluded as evidence during the State's case-in-chief, because of the State's untimely response to Doran's pretrial discovery request. This Court has concluded that, under the circumstances of

to attack credibility.").

this case, the Superior Court's rulings were entirely correct. Therefore, Doran's convictions are affirmed.

*Facts*

On May 4, 1990, the apartment of Maureen Bradley ("Bradley") was burglarized. A videocassette recorder and some jewelry was stolen. Marks on the front door and door frame of Bradley's apartment indicated that the burglar had gained entry by prying the door open.

In response to the reported burglary, Officer James Weston ("Officer Weston") of the New Castle County police was dispatched to Bradley's apartment. Officer Weston processed the crime scene for latent fingerprints. He discovered latent fingerprints on the edge of the front door and door frame to Bradley's apartment.[1]

As part of the police investigation of the Bradley burglary, Detective Keith Sparks ("Detective Sparks") conducted a canvas of the entire apartment complex concerning several recent burglaries. Doran lived in another building in the same apartment complex at the time of the Bradley burglary. Doran had been the victim of burglaries on two separate occasions, both of which had been reported to the police. Consequently, Detective Spark's spoke with Doran, who was then not a suspect. During that conversation, Doran told Detective Sparks that "I have not been in building number four," where Bradley resided.

The latent fingerprints recovered by Officer Weston from the front door and door frame to Bradley's apartment were subsequently identified as Doran's.[2] Doran was arrested. None of the items that had been stolen from Bradley's apartment were recovered.

Doran's prior statement to Detective Sparks, that he had never been in Bradley's apartment building, was not recorded or referred to in any police report. When Detective Sparks discussed the facts with the prosecutor initially assigned to Doran's case, the statement made by Doran was not mentioned. Consequently, when the State answered Doran's pretrial discovery request for disclosure of any prior oral statements, under Superior Court Criminal Rule 16, Doran's statement to Detective Sparks was not disclosed.

After the State filed its response to Doran's request for discovery, the prosecution of Doran's case was transferred to another attorney. That prosecutor interviewed Detective Sparks four days before Doran's scheduled trial date. During this interview, Detective Sparks mentioned Doran's prior oral statement for the first time. The trial prosecutor, consistent with his obligation to update responses to requests for discovery, promptly notified Doran's attorney of the prior statement. Super.Ct.Crim.R. 16(c).

On the afternoon of the day that Doran's attorney was told of the prior oral statement to Detective Sparks, a routine calendar conference was held to ascertain which cases were going to trial. Doran's attorney did not ask for a continuance. Consequently, the record reflects that, despite the disclosure of Doran's prior oral statement on the eve of trial, Doran's trial proceeded as scheduled.

At trial, during the State's direct examination, Detective Sparks was asked if he had spoken with Doran during the course of investigating the Bradley burglary. Doran's attorney objected. He argued that, given the untimely disclosure of Doran's prior oral statement, the appropriate remedy for the State's discovery violation was the exclusion of that statement.

The prosecutor admitted that there had been a discovery violation by the State, but argued, in view of Doran's decision not to

---

1. Officer Weston also obtained latent fingerprints from the master bedroom of Bradley's apartment. Those fingerprints were not identified as belonging to Doran.

2. The trial testimony of the State's experts and their written reports indicated that Doran's fingerprints were found at three different areas: 1) the outside surface of Bradley's apartment door; 2) the outside door frame; and 3) the door molding. No fingerprints belonging to Doran were located inside of Bradley's apartment.

seek a continuance after the disclosure of the statement on the eve of trial, that there was no showing of prejudice. The Superior Court sustained Doran's objection and excluded Doran's prior oral statement to Detective Sparks from evidence. The State then rested its case-in-chief.

Doran testified in his own defense. Doran denied that he committed the Bradley burglary. Doran also offered an explanation for the legitimate presence of his fingerprints on the door to Bradley's apartment. Contrary to his statement to Detective Sparks, Doran testified that he had been in building four, while selling Amway door-to-door, and had knocked at Bradley's apartment door when she was not at home.

Given the apparent direct contradiction between Doran's trial testimony and his prior statement to Detective Sparks that he had "not been in building number four," the prosecutor requested permission to use Doran's prior statement for the limited purpose of impeachment. The trial judge granted the State's application for a limited modification of the earlier evidentiary ruling, which had excluded Doran's prior oral statement to Detective Sparks.

Over Doran's objection, the State was allowed to cross-examine Doran concerning the prior statement to Detective Sparks. Doran denied ever making the prior oral statement attributed to him by Detective Sparks. The trial judge then permitted the State to recall Detective Sparks as a witness and to introduce Doran's prior statement as rebuttal evidence, to impeach the credibility of Doran's explanation for the legitimate presence of his fingerprints on the outside of Bradley's apartment door.

### Discovery Obligation

The State acknowledges that it has an obligation to provide a defendant with pretrial discovery, which includes providing "the substance of any relevant oral statement" made to the police by the defendant.

Super.Ct.Crim.R. 16(a)(1)(A). *See Kornegay v. State*, Del.Supr., 596 A.2d 481 (1991); *Ray v. State*, Del.Supr., 587 A.2d 439 (1991); *Skinner v. State*, Del.Supr., 575 A.2d 1108 (1990); *Johnson v. State*, Del.Supr., 550 A.2d 903 (1988). The State acknowledges that it has a continuing obligation to disclose discoverable evidence. Super.Ct.Crim.R. 16(c); *Kornegay v. State*, 596 A.2d at 484; *Ray v. State*, 587 A.2d at 441; *Skinner v. State*, 575 A.2d at 1125. The State also acknowledges that it has a duty to find out about discoverable evidence. *Skinner v. State*, 575 A.2d at 1126; *Johnson v. State*, 550 A.2d at 911 n. 6.

### Sanctions for Discovery Violation

■ In determining the proper sanction for a discovery violation, the trial court must weigh all relevant factors.[3] *United States v. Euceda–Hernandez*, 768 F.2d 1307, 1312 (11th Cir.1985). Superior Court Criminal Rule 16 sets forth four alternative sanctions: 1) order prompt compliance with the discovery rule; 2) "grant a continuance;" 3) "prohibit the party from introducing in evidence material not disclosed;" or 4) such other order the Court "deems just under the circumstances." Super.Ct.Crim.R. 16(d)(2). *See Ray v. State*, 587 A.2d at 441. After weighing the facts and circumstances of the case before it, the appropriate sanction for a discovery violation is addressed to the sound discretion of the trial judge.

### Doran's Statement Excluded

■ In the case *sub judice*, the prosecutor, albeit shortly before trial, learned of Doran's prior oral statement to Detective Sparks and immediately disclosed it. *See Ray v. State*, 587 A.2d at 441. Although delayed production does not completely mitigate a discovery violation, it is a factor to be considered in evaluating a defendant's claim of prejudice and assessing a remedy. *See Kornegay v. State*, 596 A.2d

---

3. Among the factors the court must weigh are the reasons for the Government's delay in affording the required discovery, the extent of prejudice, if any, the defendant has suffered because of the delay, and the feasibility of curing such prejudice by granting a continuance or, if the jury has been sworn and the trial has begun, a recess.
*United States v. Euceda–Hernandez*, 768 F.2d at 1312.

at 484–85. It was considered in Doran's case.

The trial judge carefully weighed the facts and circumstances before him. The trial judge noted that, "at this stage" of the trial, "it is a close case." The trial judge then determined that the centrality of Doran's prior oral statement to Detective Sparks, in view of the evidence that had been presented to that point in trial by the State, was "acute." Consequently, in the exercise of his discretion, the trial judge concluded that the State's untimely response to Doran's discovery request required the exclusion from evidence of his prior statement to Detective Sparks. The State then rested its case-in-chief.

### Doran's Excluded Statement Properly Admitted For Impeachment

■ Doran elected to testify in his own defense. Before Doran decided to testify, he was completely aware of the content of the prior oral statement, attributed to him by Detective Sparks, that had been excluded from evidence during the State's case-in-chief. Doran's trial testimony included an explanation for the legitimate presence of his fingerprints on Bradley's apartment door, which was inconsistent with that prior oral statement.

After Doran completed his direct testimony, the prosecutor requested permission from the trial judge to use the prior statement by Doran, which had been excluded from evidence, solely for the purpose of impeachment. In ruling upon the prosecutor's request to use Doran's prior oral statement for the purpose of impeachment, the trial judge noted that defendants are not generally permitted to take unfair advantage of a ruling which excludes a prior statement from evidence. The trial judge analogized the situation in Doran's case to the one that had been addressed in *Harris*

*v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

In *Harris*, the United States Supreme Court stated that when a defendant exercises his right to testify, he assumes a reciprocal "obligation to speak truthfully and accurately." *Harris v. New York*, 401 U.S. at 225, 91 S.Ct. at 645. In *Harris*, the Court approved the use of statements, inadmissible in the prosecution's case-in-chief, for impeaching the credibility of a defendant, once the defendant has testified in his own behalf. The Court held:

> The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements.

*Id.* 401 U.S. at 226, 91 S.Ct. at 646.

The trial judge determined that the Delaware Rules of Evidence expressly envision the admission of evidence for limited purposes. Del.R.Evid. 105. The trial judge granted the prosecutor's request to use Doran's prior statement to Detective Sparks, solely for the purpose of impeaching Doran's credibility. *See Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Thereafter, the trial judge gave a limiting instruction to the jury, to consider Doran's prior statement to Sparks solely for the purpose of judging Doran's credibility.[4] *See Walder v. United States*, 347 U.S. 62, 64, 74 S.Ct. 354, 355–56, 98 L.Ed. 503 (1954).

The United States Supreme Court has recently reiterated its adherence to the *ratio decidendi* of its holding in *Harris*, stating: "we have consistently rejected arguments that would allow a defendant to 'turn the illegal method by which evidence in the Government's possession was ob-

---

**4.** That limiting instruction was as follows:

> The fact that the defendant allegedly gave to the police an oral statement prior to his arrest, if such be a fact, may be considered by you for only one purpose as well, namely, in judging his credibility. The fact of such a statement does not necessarily destroy or impair the defendant's credibility and it does not

> raise an inference that the defendant has testified falsely. It is simply one of the circumstances that you may take into consideration in weighing the testimony of such a witness. It, under no circumstances, may be used as substantive evidence of guilt. To repeat, it may only be used in judging the defendant's credibility.

tained to his own advantage, and provide him with a shield against contradiction of his untruths.'" *Michigan v. Harvey*, 494 U.S. 344, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990) (quoting *Harris v. New York*, 401 U.S. at 224, 91 S.Ct. at 645). *See also Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). This Court has frequently relied upon and applied the holding of *Harris*. *See Bradley v. State*, Del.Supr., 559 A.2d 1234, 1247 (1989); *Weber v. State*, Del.Supr., 457 A.2d 674, 687 (1983); *Walton v. State*, Del.Supr., 407 A.2d 535, 536 (1979); *Foraker v. State*, Del.Supr., 394 A.2d 208, 212 (1978); *Wright v. State*, Del.Supr., 374 A.2d 824, 831 (1977); *Hill v. State*, Del.Supr., 316 A.2d 557, 560 (1974); *Williams v. State*, Del. Supr., 301 A.2d 88, 89 (1973).

Nevertheless, Doran argues that the use of his prior statement to Detective Sparks, which had been excluded from the State's case-in-chief due to the discovery violation, was also inadmissible in rebuttal for the limited purpose of impeachment. As authority for that proposition, Doran relies upon this Court's decision in *Johnson v. State*, Del.Supr., 550 A.2d 903 (1988). In *Johnson*, in fact, this Court did hold that the State's discovery obligation requires disclosure regardless of its intention to use a defendant's statement in its case-in-chief or in rebuttal. *Id.* at 913.

However, in *Johnson*, the contents of a prior statement attributed to the defendant had not been disclosed, despite a discovery request, before the defendant testified. After the defendant in *Johnson* testified, the prosecutor sought permission to use the undisclosed prior statement for the purpose of impeachment. This Court noted that "[i]f there had been full responses to discovery demands, the defendant might have availed himself of his constitutional right to remain silent," and not have testified. *Id.* Consequently, in the context of the circumstances presented in *Johnson*, this Court held that "[t]o permit the prosecution to withhold a defendant's oral statements from discovery, and then use them in rebuttal, would unfairly penalize a defendant who chose to testify." *Id.*

Doran's case is distinguishable from *Johnson*. Doran, unlike the defendant in *Johnson*, knew about the prior statement, attributed to him by Detective Sparks, before he elected to testify. Thus, with the complete knowledge of the prior statement, Doran could have decided not to testify. *Compare Johnson v. State*, 550 A.2d at 913 (quoting *United States v. Padrone*, 406 F.2d 560, 561 (2d Cir.1969)). However, when Doran elected to testify, he had an "obligation to speak truthfully and accurately." *Harris v. New York*, 401 U.S. at 225, 91 S.Ct. at 645. Once Doran decided to testify and gave testimony that was inconsistent with his prior statement to Detective Sparks, he was precluded from using the trial judge's earlier ruling, which had excluded that statement from evidence, "to provide himself with a shield against contradiction of his untruths." *Walder v. United States*, 347 U.S. at 65, 74 S.Ct. at 356.

The circumstances presented in Doran's case are similar to the situation addressed by this Court's recent decision in *Condon v. State*, Del.Supr., 597 A.2d 7 (1991). In *Condon*, the State failed to give timely notice of its intention to present expert testimony on the subject of child sexual abuse. *See Wheat v. State*, Del.Supr., 527 A.2d 269 (1987); *Powell v. State*, Del.Supr., 527 A.2d 276 (1987). As a result of that discovery violation, *in a pretrial ruling*, the expert testimony proffered by the State was excluded by the trial judge. *Condon v. State*, 597 A.2d at 10. Nevertheless, the State was subsequently permitted to use the expert testimony which had been excluded, for the limited purpose of rebutting a false inference that had been presented by the defendant during trial. In affirming the trial judge's ruling in *Condon*, this Court held that the defendant had "opened the door" to expert testimony for the limited purpose of correcting the erroneous inference the defendant had created, with prior knowledge of the State's contrary expert testimony that had been excluded. *Id.* at 12.

### Conclusion

The trial judge's rulings, concerning the use of the prior oral statement attributed

to Doran by Detective Sparks, were entirely correct. Therefore, the judgments of the Superior Court, which resulted in Doran's convictions, are AFFIRMED.