IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MICHAEL GROOMS, | § | |
| | § | No. 330, 2019 |
| Defendant Below, | § | |
| Appellant | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID: N1810008467A |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: April 1, 2020
Decided: May 5, 2020

Before **SEITZ,** Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

**O R D E R**

This 5th day of May, 2020, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     In his direct appeal, Michael Grooms seeks to overturn his conviction in the Superior Court of carrying a concealed deadly weapon ("CCDW").

(2)     On October 15, 2018, Grooms was at a gathering, smoking and drinking with friends. Michael's brother Kevin and a friend named Andrew Jones were also there. At one point in the evening, Grooms offered to drive to the store to purchase additional cigars and snacks for the group.  As Grooms was leaving the gathering, he agreed to give Jones a ride home.  According to Grooms, Jones was carrying a

1

zipped Coors Light cooler bag when he entered the car. Grooms stated that he "didn't pay too much attention to it" and that he "didn't have [a] reason to look at the bag."[1] As Grooms was driving Jones home, he was pulled over by Corporal Dmeza of the Wilmington Police Department because one of Grooms's headlights was out.

(3) Upon Corporal Dmeza's request, Grooms obtained his insurance and registration from the glove compartment. Grooms then reached towards the back seat, according to Grooms's testimony, to retrieve a temporary driver's license—issued to Grooms in connection with a recent driving-under-the influence arrest—that Grooms thought was in a manila envelope in a pocket behind the front passenger seat. Corporal Dmeza acknowledged at trial that Grooms said that, when he reached into the back seat, he was "looking for a manila envelope which contained his license."[2] But Corporal Dmeza told Grooms to keep his hands where he could see them, and Grooms complied. At trial, Grooms testified, consistently with what he had told Corporal Dmeza, that he was reaching towards the pocket on the back of the passenger seat to retrieve the envelope.

(4) Neither Grooms nor Jones had a valid license at the time of the stop, so as a result, Corporal Dmeza ordered them both to exit the car. Once outside the

---

[1] App. to Opening Br. at A77.
[2] *Id.* at A26.

vehicle, Grooms admitted to Corporal Dmeza that he had marijuana in his pocket and gave Corporal Dmeza permission to search the car. Upon searching the vehicle, Corporal Dmeza's partner discovered the Coors Light cooler bag on the rear passenger floorboard. The bag was unzipped, partially underneath the front passenger seat, and contained a sawed-off rifle. Additionally, officers found more marijuana in the center console armrest of the car. Lastly, the pocket on the back of the passenger seat was empty, and the envelope that Grooms mentioned was not found inside the car.

(5) A grand jury indicted Grooms on the following counts: (1) possession or control of a firearm by a person prohibited; (2) possession or control of ammunition by a person prohibited; (3) possession of a firearm by a person in possession of marijuana; (4) carrying a concealed deadly weapon ("CCDW"); (5) possession of marijuana; (6) driving a vehicle while license is suspended or revoked; and (7) an equipment (headlight) violation. Grooms successfully moved to sever the person-prohibited counts, and the State entered a *nolle prosequi* on the count charging Grooms with possession of a firearm by a person in possession of marijuana. The remaining counts were tried before a jury, which found Grooms guilty on all counts. At the subsequent bench trial, the court found Grooms not guilty of possession or control of a firearm and ammunition by a person prohibited. The Superior Court then sentenced Grooms for CCDW to eight years of Level 5

3

incarceration suspended after two years with decreasing levels of probation and 30 days at Level 5 for driving-while-suspended conviction. The Superior Court also imposed fines and costs.

(6)     On appeal, Grooms argues that the Superior Court erred when it denied his motion for judgment of acquittal on the CCDW charge. Further, Grooms argues that the Superior Court abused its discretion when, as a sanction for Grooms's violation of his discovery obligations under Superior Court Criminal Rule 16, it prohibited the introduction of the manila envelope—according to Grooms, the envelope for which he was reaching during the vehicle stop—that contained documents pertaining to Grooms's DUI.

(7)     We review an appeal from a denial of a motion for judgment of acquittal *de novo*.[3] In particular, we consider "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt of all the elements of the crime."[4] We review evidentiary rulings for an abuse of discretion.[5] "An abuse of discretion occurs when the trial judge 'exceed[s] the bounds of reason in view of the circumstances and has so ignored recognized rules of law or practice so as to produce injustice.'"[6]

---

[3] *Clay v. State*, 164 A.3d 907, 913 (Del. 2017).
[4] *Id.*
[5] *Burns v. State*, 968 A2d 1012, 1022 (Del. 2009).
[6] *State v. Wright*, 131 A.3d 310, 320 (Del. 2016).

(8)     11 *Del. C.* § 1442 provides that "[a] person is guilty of carrying a concealed deadly weapon when the person carries concealed a deadly weapon upon or about the person without a license to do so as provided by § 1441 of this title." When determining whether a weapon transported in a car is sufficiently accessible to the driver to be "carried," we consider three non-exclusive factors:

> (1) Would the [driver] have to appreciably change his position in order to reach the weapon?
> (2) Could the [driver] reach the weapon while driving?
> (3) How long would it take for the [driver] to reach the weapon, if the defendant were provoked?[7]

(9)     Grooms concedes that the firearm was located underneath the passenger seat of his car and that "the State made a prima facie showing that the firearm could be considered by a rational juror to be on or about [his] person."[8]  Grooms argues, however, that a rational juror could not conclude that he knew that the Coors Light cooler bag contained the gun.

(10)     It is well established—and Grooms concedes—that knowledge of the presence of a concealed weapon may be proved by circumstantial evidence.[9]  Here, the sawed-off rifle was found in an unzipped cooler bag underneath the front passenger seat with the butt end nearest the driver's side of the vehicle.  The State

---

[7] *Buchanan v.* State, 981 A.2d 1098, 1104 (Del. 2009) (quoting *Dubin v. State,* 397 A.2d 132, 135 (Del 1979)).
[8] Opening Br. at 9.
[9] *Smith v. State*, 2015 WL 1422427, at *2 (Del. March 26, 2015) (citing *Ross v. State*, 232 A.2d 97, 98, (Del. 1967)).

introduced photographs that depicted how very close the cooler bag was to Grooms as he sat behind the wheel. And when Corporal Dmeza began to address Grooms during the traffic stop, Grooms reached "in the back towards the rear passenger side seat towards the ground"[10]—that is, precisely in the direction of the cooler bag. And though Grooms claimed that he was reaching for a manila envelope from which he hoped to retrieve his temporary driver's license, the police found no such envelope when they searched Grooms's car.

(11) Grooms seems to argue that the jury was bound to accept his explanation for reaching toward the floor behind the front passenger seat. We disagree. Given the manila envelope's absence, a rational juror could conclude that Grooms's explanation was not credible and that Grooms was reaching toward the cooler bag with the intent to ensure that it was concealed from the officer's view.

(12) In a similar vein, Grooms argues that "[e]vidence adduced at trial showed that the front seat passenger [Jones] placed the Coors Light cooler bag in the car immediately behind where he sat . . . [and that there was] [n]o evidence . . . [that] showed that [Jones] ever informed . . . Grooms of the contents of the cooler bag."[11] And to be sure, Grooms and another witness—Grooms's brother Kevin—testified that Jones came out of the house carrying a Coors Light bag, which he put in the

---

[10] App. to Opening Br. at A26.
[11] Opening Br. at 10.

back of Grooms's car. But Jones himself did not testify, nor was there any evidence showing that Jones had claimed responsibility for the presence of the cooler bag and rifle in Grooms's car. We have previously noted that "[t]he fact finder is free to reject all or part of any witness's testimony. The fact finder need not believe even uncontroverted testimony. We will not substitute our judgment for the fact finder's assessments in these areas."[12] Likewise here, the jury was not required to accept Grooms's or his brother's testimony, even if uncontroverted.

(13) In reaching our conclusion on this issue, we recognize that the evidence that Grooms knew of the presence of the weapon was not overwhelming. But viewing this evidence as outlined above in a light most favorable to the State, which our standard of review requires us to do, we are satisfied that a rational trier of fact could find that Grooms knew that the weapon was in the cooler bag and, consequently, was guilty of CCDW beyond a reasonable doubt.

(14) Grooms also claims that the Superior Court erroneously prohibited him from introducing the manila envelope, which he claimed to have been reaching for as discussed above. According to Grooms, the envelope contained DUI related paperwork, vehicle registration, insurance information, the DUI ticket, and a temporary driver's license. During his direct examination, Grooms sought to introduce the manila envelope with its contents because, in his view, it would

---

[12] *Poon v. State*, 880 A.2d 236, 238 (Del. 2005).

7

corroborate his testimony that he was reaching for the envelope and not for a gun that he did not know was there.

(15)    The State opposed the introduction of the evidence because Grooms had not produced the envelope or any of its contents in response to the State's pretrial reciprocal discovery request.   Grooms's counsel confirmed that he had received the State's discovery request, but that Grooms had just provided the envelope and documents that morning.  As a result, Grooms's production of the documents came after the State had rested its case.  Pointing to the unfairness to the State, the court prohibited Grooms from introducing the envelope and its contents.  Grooms now claims that this ruling was an abuse of discretion.

(16)    Superior Court Criminal Rule 16(b) provides that, if a defendant requests disclosure, and the State complies, "then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, [or] documents . . . (i) if the item is within the defendant's possession, custody, or control; and (ii) the defendant intends to use them in the defendant's case-in-chief at trial."[13] When a party fails to comply with Rule 16, "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from

---

[13] Super. Ct. Crim. R. 16(b)(1)(A).

introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances."[14]

(17)   In *Doran v. State*,[15] we held that "[i]n determining the proper sanction for a discovery violation, the trial court must weigh all relevant factors," including the reasons for the noncomplying party's delay in providing the required discovery, the extent of prejudice, if any, suffered by the requesting party, and "the feasibility of curing such prejudice by granting a continuance or, if the jury has been sworn and the trial has begun, a recess."[16]  "After weighing the facts and circumstances of the case before it, the appropriate sanction for a discovery violation is addressed to the sound discretion of the trial judge."[17]

(18)   In this case, Grooms offered no reason for his delay in producing the manila envelope.  And the trial judge noted the inherent unfairness that attended Grooms's production of the evidence "moments before [he was] going to testify"[18] and after the State had rested.  And though the court did not expressly weigh the feasibility of recessing the trial to mitigate the unfairness, neither did Grooms suggest that alternative.  All things considered, including that Grooms was on the stand near the end of the second day of a two-day trial (excluding the charge to the

---

[14] *Doran v. State*, 606 A.2d 743, 745 (Del. 1992).
[15] *Id.* at 746 (Del. 1992) (citing *United States v. Euceda-Hernandez*, 768 F.2d 1307, 1312 (11th Cir. (1985)).
[16] *Id.* at n.5.
[17] *Id.*
[18] App. to Opening Br. at A81.

jury, the jury deliberations and verdict), we conclude that the trial judge's decision to forgo a recess and to exclude the envelope—an item of seemingly marginal evidentiary value—was not an abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

10